IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

RECEIVED

DEC 5 - 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Maurice Hunt, | Case No. 3:21-cv-50156 |
| Plaintiff, | 3:21-cv-50459 |
| v. | Judge Reinhard |
| A. Ciolli, et al., | Magistrate Judge Schneider |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff, Maurice Hunt ("Hunt"), pursuant to Federal Rule of Civil Procedure 8(a), states the following claims:

### JURISDICTION AND VENUE

1. This is an action brought to redress the deprivation of Hunt's rights secured by the United States Constitution, 42 U.S.C. § 1983, the Rehabilitation Act, 29 U.S.C. § 794(a), and the Federal Tort Claims Act, 28 U.S.C. § 2674, and Bivens.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over all Defendants because their actions giving rise to the claims in this Second Amended Complaint occurred in Thomson, Illinois.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Second Amended Complaint occurred in this District at USP Thomson located in Thomson, Illinois.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

A. Name: MAURICE HUNT

B. List all aliases: N/A

C. Prisoner identification number: #70092-097

D. Place of present confinement: Thomson-USP

E. Address: P.O. Box 1002 Thomson, IL. 61285

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A. Defendant: A. Ciolli

Title: Warden

Place of Employment: Thomson-USP

B. Defendant: J. Hess

Title: Facility Captain

Place of Employment: Thomson-USP

C. Defendant: J. Leonowicz

Title: Facility Captain

Place of Employment: Thomson-USP

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## II. Defendants

d. FNU Smiddy
Unit Manager
Thomson-USP

M. Federal Bureau of Prisons
US Dept. of Justice

e. DR.K (correct spelling of last name unknown)
Chief Psychologist
Thomson-USP

f. FNU Dugdale (female)
Special Investigative Services Lieutenant
Thomson-USP

g. FNU Dugdale (Male)
Correctional Lieutenant
Thomson-USP

j. A. Drinkall
Correctional Officer
Thomson-USP

h. M. Winkler
Correctional Officer
Thomson-USP

K. C. Bumgard
Register Nurse
Thomson-USP

i. FNU Gaston
Correctional Officer
Thomson-USP

L. J. Graham
Correctional Counselor
Thomson-USP

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States: *Please See Case No. #3:21-CV-50156 Court order dated 11/15/2021 for a*

A. Name of case and docket number: _____ *Complete list of Prior filed cases*

B. Approximate date of filing lawsuit: _____

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
_____
_____
_____

D. List all defendants: _____
_____
_____
_____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name of judge to whom case was assigned: _____
_____

G. Basic claim made: _____
_____
_____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____
_____
_____

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

*My Paper is quite limited Please See above for list of previous lawsuit / My Pen ink is limited as well. Maur Hut*

3

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.    Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

I arrived at Thomson-USP on 1-20-2021. I was initially housed in C-Unit for 3wks due to Covid-19 Quartine Protocol. On or about Feb. 11th. 2021 I was transfered to E-Unit. Between Feb. 11th. thru June 29th, 2021 I was housed in E-Unit. On June 29th, 2021 I was transfered to F-Unit-range 3, by C/O M. Winkler. Upon my arrival in F-3 I asked C/O M. Winkler why I was going into F-3 when I was told I was going to F-1 (Note: The entire E-1 range was being closed and we were all moved to F-1, 80 to 98 inmates moved) C/O M. Winkler advised me that since I like to file lawsuits against correctional staff this is where complaining inmates go. While this was being told to me several dozen inmates ~~ete~~ were screaming from their cell "Welcome to Hell". I was then placed in cell #1 on F-3. Starting on June 30th, 2021 (Wedn.) thru July 15th, 2021 C/O M. Winkler would pass out the lunchtime meals (excluding the weekends as M. Winkler worked only Monday-Friday) and hand me two trays through the door port, neither tray contained food in them. I immediately brought this to the attention of C/O M. Winkler who responded that my trays had food on them. Not wanting to agitate C/O M. Winkler I waited later that afternoon and told Lt. Dugdale (Male

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

about his C/o M.Winkler giving me empty trays for lunch. Lt.Dugdale told me I should have thought about that before I started filing lawsuits, and walked away from my cell. (I took this response from Lt.Dugdale as a reference to the Civil Rights Lawsuit in Case No. #3:21-CV-50156 Hunt v. A.Ciolli et.al.,) My next door neighbor then got on the vent after hearing this exchange between me and Lt.Dugdale and advised me that talking to Lt.Dugdale about anything his staff do was a dead-end, that he covers for their conduct. During the same period of time June 30th, thru July 13th, 2021 I was denied a Shower. Also, almost daily M.Winkler would come to my cell demand I sub-mitt to restraints for a cell search. He would then search my cell confiscate all my pens, paper, envelopes and selective legal material that I had that aided me in knowing BOP Policy's and the BOP's Standards for Employee Conduct. (I believe this was done in order to prevent me from sending out complaints about how the Correctional Officers were operating un-constitutionally in F-3 with the treatment of the inmates in there. On July 15th, 2021 for the first time C/o M.Winkler passed out the breakfast trays and gave me an empty tray as well as at lunch. Relizing that I was being targeted by a decrease in my calorie-food intake amount, unable to effectively work on my on-going legal cases,

SEE ATTACH SHEET # 2

5

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Case: 3:21-cv-50156 Document #: 55 Filed: 06/09/22 Page 9 of 11 PageID #:226

Void m.H.

~~C. Bumgard knew or should have known through the Plaintiff's visible injuries and verbal complaints that the Plaintiff had been abused and failed to take immediate actions to ensure the abuse would not continue or occur.~~ And failed to provide or get Plaintiff some Medical Treatment for his Visible injuries

WHEREFORE, for all of the above Counts, the Plaintiff, MAURICE HUNT, prays:

A)      That this Court issue a preliminary and permanent injunction enjoining the Defendants, A. Ciolli (Warden), FNU Kruger (HSA), J. Leonowicz (Captain), and FNU Borden (Unit Manager), their agents, employees and successors:

1.      from continuing to house the Plaintiff in his cell with another cellmate;

2.      from continuing to deprive the Plaintiff of a proper wheelchair and handicapped cell and shower facilities, showers and adequate medical care;

3.      from continuing to deny the Plaintiff such out-of-cell activities as exercise, access to the law library and telephone calls from his attorney; and

4.      that all correction officers and prison officials be restrained from beating, harassing, threatening or interfering with the Plaintiff's prisoners rights;

B)      That the Plaintiff be awarded damages for violation of his civil rights against the Defendants and each of them in the amount of $350,000.00. A Ciolli, J. Leonowicz, Borden, Kruger

C)      For such other and further relief as the Court deems just and necessary.

D) That the Plaintiff be awarded damages for violations of his civil rights against Defendants A. Ciolli, Lt. Dugdale (Male), C/o M. Winkler, C/o FNU Gaston, C/o A. Drinkall for 5 million dollars each. For a total of 25 million for Compensatory and Punitive damages

9

**~~COUNT~~ - Eighth Amendment - Cruel and Unusual Punishment**

~~Hunt incorporates and restates paragraphs 1-74 of the foregoing as if set forth fully herein.~~

Defendants engaged in an ongoing pattern of physical abuse and facilitating sexual abuse and violence against Hunt which violated Hunt's right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment.

The abuse and violence was undertaken with deliberate indifference to Hunt's rights and for no legitimate penological purpose.

As a result of the abuse and violence; Hunt was harmed and suffered damages.

**~~COUNT~~ - Eighth Amendment - Failure to Protect**

~~Hunt incorporates and restates paragraphs 1-74 of the foregoing as if set forth~~ fully herein.

Defendants had notice of a substantial risk of harm to Hunt and reasonable opportunity to prevent the harm from occurring, but consciously and deliberately disregarded the risk to Hunt's physical and mental safety.

The actions and inactions were undertaken with deliberate indifference to Hunt's rights and for no legitimate penological purpose.

As a result of the misconduct, Hunt was harmed and suffered damages.

**~~COUNT~~ - Eighth Amendment - Deprivation of Necessary Medical Care**

~~Hunt incorporates and restates paragraphs 1-74 of the foregoing as if set forth fully herein.~~

Hunt had an objectively serious medical condition causing him disability.

Defendants willfully ignored and, in some instances, consciously disregarded, Hunt's needs for treatment for his disability.

The actions and inactions were undertaken with deliberate indifference to Hunt's rights and for no legitimate penological purpose.

As a result of the misconduct, Hunt was harmed and suffered damages.

~~COUNT V - Fifth and Fourteenth Amendment - Interference with Due Process~~

~~Hunt incorporates and restates paragraphs 1-20 and 66-71 of the foregoing as if set forth fully herein.~~

~~Hunt's attorneys properly labeled all mail to Hunt "Special Mail" specifying that the contents therein were attorney/client privileged and confidential pursuant to USP Thomson's requirements.~~

~~Hunt's confidential and privileged written communications with his lawyers have been intercepted by prison officials. They have been opened outside the presence of Plaintiff on multiple occasions and without justification.~~

~~Defendants willfully ignored and, in some instances, consciously disregarded, Hunt's right to privacy when conducting privileged communications with his attorneys.~~

~~The actions and inactions were undertaken with deliberate indifference to Hunt's constitutional right to unhindered access to the courts and for no legitimate penological purpose.~~

~~Hunt's ability to fully participate in the prosecution of his claims has been chilled.~~

~~As a result of the misconduct, Hunt was harmed and suffered damages.~~

COUNT F - First Amendment - Retaliation

Hunt incorporates and restates paragraphs 1-20 and 66-71 of the foregoing as if set forth fully herein.

Defendants intercepted Hunt's mail and legal documents in retaliation for Hunt's claims.

11

The actions and inactions were undertaken with deliberate indifference to Hunt's constitutional right to unhindered access to the courts and for no legitimate penological purpose.

Hunt's ability to fully participate in the prosecution of his claims has been chilled.

As a result of the misconduct, Hunt was harmed and suffered damages.

## COUNT VI - Federal Tort Claims Act

~~Hunt incorporates and restates paragraphs 1-74 of the foregoing as if set forth fully herein.~~

Defendants physically battered Hunt, facilitated his battery, and caused him Physical ~~emotional~~ injury on more than one occasion.

Defendant BOP negligently hired and retained at least some of the individual Defendants despite their personal history of misconduct at other BOP facilities.

Defendants intentionally placed Hunt with cell mates, including but not limited to Ellis, who had a propensity for sexual violence with the intent that Hunt be sexually violated, in retaliation for bringing this litigation.

~~Defendants intentionally interfered with Hunt's privileged and confidential attorney/client communications via the telephone and the mail.~~

Hunt has exhausted his administrative remedies with regard to the claims giving rise to this count either by receiving leave to file cause in this District Court, through failure to reply to his grievance within the 6 month statutory period, or through intimidation thereby making his grievances futile.

The misconduct was undertaken for no legitimate penological purpose.

As a result of the misconduct, Hunt was harmed and suffered damages.

## COUNT VII - Rehabilitation Act

~~103. Hunt incorporates and restates paragraphs 1-74 of the foregoing as if set forth fully herein.~~

104. Defendants discriminated against Hunt because of disability by, among other things, failing to provide him accessible showers, accessible cells and basic hygiene, as well as medical treatment needed for his disability.

~~122.~~ The misconduct was undertaken for no legitimate penological purpose.

~~123.~~ As a result of the misconduct, Hunt was harmed and suffered damages.

## PRAYER FOR RELIEF

Plaintiff MAURICE HUNT requests that the Court enter judgment in his favor and against all Defendants for injunctive and monetary relief including compensatory damages, punitive damages, and attorneys' fees and costs, and for any other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Hunt demands a jury trial on all issues so triable.

13

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.  Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Requesting this Court to issue immediate orders that Thomson-USP ensure that during the duration that an inmate is in restraints of restraint chair that that placement be under constant video footage/camera and that such video be preserved for up to 6 six months. I'm also requesting compensatory and punitive damages in the amount of 5 million dollars. I am also requesting a no-contact order be issued to M. Winkler, A. Drinkall, Gaston, Lt. Dugdale (Male + Female) to stay away from me indefinitely.

**VI.** The plaintiff demands that the case be tried by a jury. ☒ M.H. YES ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Resubmitted on

Signed this ___12___ day of ___2___, 20 21   11/30/22 M.H.

_Maurice Hunt_
(Signature of plaintiff or plaintiffs)

MAURICE. Hunt
(Print name)

# 70092-097
(I.D. Number)  Thomson-USP

P.O. Box 1002

Thomson, IL. 61285
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ATTACH SHEET # 2

IV. STATEMENT OF CLAIM:

Cont.) and unable to shower while a growing rash was spreading among my genitilia area, I felt driven to suicide. Later that day at approx. 4:00 P.M. I was observed by Lt. Cron to be attempting to cut my wrist. At this point I was taking out the cell and 15-20 min. later Psychologist DR. K. came and conducted a Suicide Risk Assessment. It was then I described in detail the abuse I had been suffering at the hands of C/O M. Winkler. DR. K advise me I should contact the SIS Dept. (The Prisons Police Dept. essentially) about what I'm saying I explain to her this would be dangerous as Lt. Dugdale's wife was the SIS Lieutenant and she would tell her husband about my complaints and retaliation would occur. DR. K decided placing me on suicide watch would be the best course.

The next day 7/16/2021 (Friday) DR. K, showed up with Unit Mang. Smiddy and advised me that she explained every-thing to U.M. Smiddy that I told her the previous day. DR. K. asked me to listen to Smiddy. U.M. Smiddy began to detail what her expectations of me were in order to be fed, shower, and be allowed to work on my on-going legal/Court cases. When she stop talking I inquired about the holding of Lt. Dugdale (Male) and M. Winkler accountable for the over two (2) weeks of abuse. U.M Smiddy refused to engage me in this conversation and continue to emphasize that she was only talking about

Attach Sheet # 3

this (that) day going forward, and kept trying to convince me to come off "suicide Watch". Then DR. K. cut in and asked me about what I told the new african-Amer. correctional officer that was "Sitting On Me" last night during suicide watch. I asked her how she knew of that, she said the officer wrote everything down about my complaints of mistreatment - U.M. Smiddy then jumped in while looking at DR. K. and said "We're writing things down-we don't need to write things down." DR. K. then assured her it wasn't nothing official just the every 15min. log book about what the patient was doing. I look at them both and knew that U.M. Smiddy was apart of the conspiracy on what was happening to me. I told both of the Ladies that I continue to feel "Suicidial." DR. K. said she would return the next day to check on me. The next day 7/17/2021 (saturday). DR. K returned and her demeanor had changed. I immediately asked her did she notice that U.M. Smiddy was oppose to documenting my complaints or never mention she would forward my complaints to the proper authorities. DR. K. said "You can dwell in that misery all you want or you can go to another Unit and get out of that environment. I asked her what about going to F-1 which at the time was a Protective Custody (Range). DR. K. flatly told me in a stern voice "If you stay in F-Unit it's not going to stop." I knew then that I was targeted and

Attach Sheet #4

my only chance to escape was through DR.K.. DR.K. then explain to me that she would move me over to G-4 where their was Lt. Deleon and Lt. Brewer and these Lieutenants were not known to allow or participate in mistreatment. I agreed, But I asked her how would she pull it off on a Saturday She said to leave that to her. I then agreed to come off "Suicide Watch" And was transported via my medically-prescribed wheelchair.

From 7/17/ thru 7/27/2021 I was housed in G-4 cell#1 by myself. ~~On 7/17/2021 C/o M. Winkler and a female C/o come to my cell. C/o M. Winkler told me [that at ~~ ~~mm The told I coming~~. On 7/27/2021 C/O M. Winkler retrieved me from C/O Chastain coming out of Medical Office in G-Unit after seeing the Dentist. C/o M. Winkler took control of my wheelchair and escorted me back to F-Unit. During the escort C/O M. Winkler kept boasting to me that I could never get away from him that we were going back home to play the rest of the games he never got a chance to play with me. M.Winkler said a bunch of sick-sadistic things to me were going to happen and he was definitely putting fear into me. Once we entered F-3 M.Winkler wheeled me to shower D (which was the designated wheelchair/handicap shower). I imme-diately started feeling depressed and suicidial. I told C/O

Attach Sheet #5

M. Winkler I felt suicidal and wish to speak to someone from Psychology Dept. C/o M. Winkler said that was not going to happen as thats how I got away from him the first time. After being in the shower for about 1hr. Lt. Dugdale (Male) appeared at the cell door and asked me was I going to "Cuff-Up" and go into the cell. I told him that I was feeling suicidal and I feared if I went into the cell I would harm myself. I further informed Lt. Dugdale (Male) that DR. K. told me that if I ever feel like harming myself to notify any staff member and staff are required by BOP Policy to contact someone from Psychology Dept. and a Psychologist would come conduct a SRA exam.

Lt. Dugdale informed me that he was not going to contact Psychology that if I don't cuff-up he was going to assemble a Use-of-Force Team and that I would forcefully be placed in mechanical restraints in a restraint chair. I insisted on speaking to someone from Psychology Dept. Lt. Dugdale then said he would return with a Use-of-force team.

About a hour or so later after Noon time Lt. Dugdale return with a Use-of-Force Team and an officer video tapping the entire incident. Fearing for my safety after seeing 6-7 fully armored Officer with a Cart full of weapons I then complied with Lt. Dugdales instructions to "Cuff-Up." I was wheeled out the shower taken to another location

Attach Sheet #6

where my cloth clothes were removed and I was re-dressed in see through paper clothes. Placed in excessively-tight mechanical steel handcuffs afix to a wrap around Belly-Chain that was put on excessively tight. I was then placed in a Pro-Restraint chair and with the chairs restraints, strapped down to the chair, by arms, waist, and feet.

Register Nurse C. Bumgard conducted the BOP's mandated Medical restraint check to ensure that the restraints were not constrictive on my blood flow. The restraints were clearly on excessively-tight yet C. Bumgard stated that they were fine.

I was then wheeled in the restraint chair to cell#23 on F-3 range, at or about 1:00 P.M.

Finally, at about 8:00 P.M. thru 10:00 P.M. Lt. Smyth conducted a restraint check with C/o Hubbard and loosened the restraints around my wrist, by then my wrists had open cuts all around them and were severly swollen.

The next morning (7/28/2021) at approx. 7:30 A.M. C/o M. Winkler showed up to the cell door window smiling. The cell door then rolled open M. Winkler, Gaston, and Lt. Dugdale (Male) entered the cell. M. Winkler was holding a full lenghth body shield and immediately began to beat me in a left to right motion across my left and right side of my head, 7-8 times. Then all 3 gaurds retreated out of the cell. At this time my head was

Attach sheet #7

exploding with pain and my vision was blurred.
At approx. 9:30 A.M. (Every two hrs. a Lieutenant must do a restraints check) the same 3 officers came into the cell led by M.Winkler holding the shield and immediately began to whack me across my left to right - right to left several times. (head)      M.Winkler then use the shield to choke me by pushing the shield against my face forcing my head back until I could no longer breathe. All this done in the presence of Lt. Dugdale and C/o Gaston - neither person attempted to protect me from this abuse. The (3) three then exited the cell.

Assuming, it was about 11:30 A.M. C/o M.Winkler showed to the cell door with his sadistic smile through the window. However this assault was different. When the cell door open M.Winkler with the shield led the charge but C/o A.Drinkall was behind him followed by Lt. Dugdale (if C/o Gaston was in the back I couldn't tell). Again M.Winkler started hitting me with the shield as before and using the shield to choke me till right before I pass out. While this was going on A.Drinkall started saying "Here's what I don't understand Hunt, you always say that your being assaulted by staff, but you are the one always assaulting staff" Then suddenly Lt. Dugdale spoke for the first time

Attach Sheet #8

*(margin, sideways: yelling this dialogue by Lt. Dugdale, he was stomping on my bear feet over and over again)*

and started demanding I listen to him while I was screaming while M. Winkler was applying Pain to me with the shield. Lt. Dugdale said "You have spent your whole Prison time filing complaints and lawsuits against Correctional Officer, and I don't think your able to stop, but I'm here to tell you it's going to stop today. (I was screaming and promising I would never file another complaint) I got it approved to take away your wheelchair, you ain't getting no more handicap cell and when you come out of restraints I got (5) five cellmates ready for you. (I was screaming "I promise Im done I'll never file a complaint again) Lt. Dugdale ended the conversation by saying "Your not done, your done when I say your done." He then told A. Drinkall and M. Winkler "let's go." They exited the cell.

I began to pray like never before asking "God please stop this now" and just like that, maybe a minute later Warden A. Ciolli appeared at the cells window (Ciolli appeared about ten minutes after the beating) when I saw him I thought I was delusional from the beating so I yelled his name "Ciolli" and he laughed and said "calm down we are coming in". (At this time I could here several dozen inmates yelling from their cells telling the warden(s) that "they been beating on him all morning - He's been screaming every time

Attach Sheet #9

they go in there" etc..........
The Cell door rolled open and first-in was M. Winkler with the shield followed by Warden Ciolli and Warden Gonzales and Lt. Dugdale and just beyound them were both Capt.'s (Hess and Leonowicz), both Associate Wardens, Trust Fund Supervisor Lee and Psychologist Bates (female). This was highly unusual as I have viewed numerous inmates placed in restraints over the last (6) six months and the entire Prison Administration never comes and see about them. I speculate that some unknown BOP Employee was aware somehow that I was getting beaten and blew the whistle on what was happening to the Warden(s).

Warden Ciolli asked me what was I doing in restraints I told him that yesterday I was requesting to see Psychology due to having suicidal thoughts and Lt. Dugdale and M. Winkler refused to call them as Policy dictated because they felt the way I got out of F-3 the first time was through Psychology Dept.. I then asked Warden Ciolli for permission to speak freely. He looked at me and said "Speak" I then bravely in front of M. Winkler and Lt. Dugdale and the rest of administration told both Warden(s) that M. Winkler had been beating me with the shield all morning while Lt. Dugdale been stomping on my bear feet every time the came in the cell to do restraint

Attach Sheet #10

checks.

Warden A. Ciolli then said that his facility had cameras everywhere that he would review the camera's and see what they showed. But I instantly knew this was Malarkey as there are no camera's in the cells and it is widely known among the inmates and employees that during the time an inmate is in restraints - it is a blind spot where staff can abuse the prisoner and get away with it.

Warden Ciolli said that I would be taken out of the restraints. I asked him was he aware that I was in G-Unit the two (2) weeks prior from yesterday (7/27/2021). He said he was unaware of this. I told him that Lt. Dugdale conspired to get me back over here (F-3) so that him and M. Winkler and others could abuse me. Ciolli said he would look into it. Ciolli then said he would have Medical come do an assessment on my injuries for my claims of assault.

The Warden(s) then exited the cell as well as their entourage. About 10-15 min. later Register Norse C. Bumgard came to the cell with Lt. Dugdale led by M. Winkler still wielding the shield. The cell was opened and C. Bumgard was very hostile towards me, she conducted a blood pressure check and other vital checks. Then she asked me about my complaint of being assaulted I was fearful

Attach Sheet # 11

of reporting it to her in the presence of M. Winkler and Lt. Dugdale, however I went on and told her what I told both Wardens. C. Bumgard then stated I see no injuries, when I told her that my head hurt real bad she said I can't see in your head. Then her and Winkler, Dugdale all walked out laughing.

I remained in restraints for about another hour or so when M. Winkler showed to the door cell window with the same sadistic smile on his face as before. I knew he was going to hit me again. The cell door opened and he charged in I yelled "Don't hit me" and he hit me with more force than before back and forth, left to right, right to left across my head. Winkler then jumped in the air and landed on top of my handcuffs that were afixed to the bellychain around my waist. His full body weight was on my wrist at the same time he was pressing the shield into my face, pressing my head back cutting off my air supply. Lt. Dugdale then said "The Warden doesn't give a fuck about you he's a republican he's on our side. I then said "I didn't tell noone what happen how could I I've been in restraints all this time". M. Winkler then started hitting me again with the shield while Lt. Dugdale was calling me a fucking asshole and that's why the Warden came. Then Lt. Dugdale told M. Winkler and Gaston

Attach Sheet #12

to take me out of restraints. At this point my wrists were bleeding heavily and I could feel blood dripping around my torso/back where the belly chain had cut into me. I was barely conscious. M. Winkler and Gaston, after taking me out the restraint chair carried me and put me in my medically-prescribed wheelchair right outside of the cell.

Suddenly C/O A. Drinkall appeared and said "You need to wear a mask" and started putting it on me fast, my face. I immediately relized that the Mask was filled with pepper spray, which I enhaled and started coughing and choking violently. Lt. Dugdale told C/O Gaston to go get the other inmates for escort to G-Unit. Several minutes later M. Winkler started pushing my wheelchair outside. Once outside Lt. Dugdale started threatening me telling me that if I tell anybody about what happen he would come back and it would be worse. Lt. Dugdale told me that his wife was the SIS Lieutenant and she would hear first about any complaints I filed and he would know instantly. M. Winkler said if he heard me saying anything he would do worser to me than he already has. Behind me C/O Gaston also threaten me that he better not hear anything about complaints or next time it would be his turn. I promised them in between coughs and sneezes I wouldn't say nothing and assured them that I had learned my lesson.

Attach Sheet # 13

As a non-lawyer I state the following;

1. Warden (s) Ciolli and Gonzales failed to protect me after I advised them in the presence of Winkler + Dugdale that they had assaulted me – they knew or should have known and or was deliberately indifferent to any future harm or retaliation that their Employees may take out on me for filing a verbal complaint to their boss and their inaction led directly to me being assaulted again after their exit.

2. The Warden(s) should have or knew of the previous rumors or previous complaints filed by numerous other inmates that their Employees were abusing inmates while in restraints chairs in the cells where no camera's were and failed to implement policy or procedures to prevent abuse from occuring in these 'Blind Spot' areas

3. Captain Hess and Leonawicz have the direct responsibility of ensuring the safety of all inmates within the institution. Both Captains knew or should have known of the constant complaints by numerous prisoners of abuses occuring by their lower rank employees and have failed to take actions to abate such abuses by preventing the restraint cells from having or

Attach Sheet # 14

requiring constant camera footage of these 'Blind areas.'

4. First Name Unknown Smiddy was aware as Unit Manager of F-Unit that I previously complained of abuses by to herself and Chief Psychologist J.R.K. regarding M. Winkler and Lt. Dugdale depriving me of showers, food, legal property, writing utensils, and legal property. U.M. Smiddy knew or should have known or was deliberately indifferent to the facts that Lt. Dugdale and M. Winkler previous actions were indicative of personal or professional vindictiveness towards me and that these to employees would attempt to continue taking abusive actions towards me, and U.M. Smiddy failed to take reasonable-necassary actions to abate any further abuses occuring to me by M. Winkler or Lt. Dugdale. (Failure To Protect)

5. Chief Psychologist J.R.K. knew of abuses that I was subject to by Lt. Dugdale's (Male) directions or in-actions and M. Winkler, that I detailed to her. But failed to bring these complaints to the Warden's attention or Regional Office or Central Office. But instead did not take reasonable actions to Protect me from future abuse when she was aware of facts that should have alerted her that Lt. Dugdale and M. Winkler would continue to either abuse me or attempt to abuse me in the future (failure to protect)

Attach sheet #15

6. SIS Lt. Dugdale (Female) participates in a conspiracy with her husband to provide cover support to illegal/abusive actions taken by her husband Lt. Dugdale by providing him information regarding complaints against him by inmates. Furthermore, SIS Lt. Dugdale is the Chief Investigative Officer at Thomson and knows or should know or is deliberately indifferent that her position as SIS Lt. and wife will conflict with investigation of complaints against her husband Lt. Dugdale. MS. Dugdale furthers allows her husband to use her position as an intimidation factor to silence inmates (mine) complaints against her husband. (I need a lawyer this is complicated to say)

7. Lt. Dugdale, M. Winkler, FNU Gaston, A. Drinkall all comes under the U.S. Supreme Ct. opn. in Wilkins v. Gaddy (2010), or that they failed to protect or intervene while I was being assaulted.

8. C. Bumgard knew or should have known through my visible injuries and verbal complaints that I had been abused and failed to take immediate actions to ensure the abuse would not continue to occur (Failed To Protect) OR provide Medical attention/treatment for my visible and complained about injuries to her.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV. **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

This Claim is written under "Imminent Threat OF Serious Injury" Occuring to Plaintiff.

① I arrived at Thomson-USP on 1-20-2021 (Wedn.) Upon my arrival C/O (Correctional Officer) J. Graham confiscated my medically-prescribed wheelchair and left me on a bunk. I was given no reason why my wheelchair was taken from me (I have submitted a "Tort Claim" against J. Graham with the North Central Regional Office). For the two days I was forced to drag myself around the cell, on the floor, from the bunk to the cell door to obtain my meals, use the toilet, or respond to other BOP staffs' communications. On the night of 1-21-2021 (approx 7:30 p.m.) a medical nurse appeared at my cell door with a defective wheelchair (the wheelchair was missing both footrests). I was helped off the floor up into the defective wheelchair. I asked the nurse why my wheelchair I came with was taken in the first

SEE ATTACH SHEET #2 *M.H.*

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ATTACH SHEET # 2 of 14

## IV. Statement OF CLAIM (Continued from pg. #4)

place. She responded "I don't know." The deprivation of my assistive devices (walker-4pt cam and wheelchair) left me to feel hopeless and helpless and caused me sever pain in my back and hip (left) by dragging myself across the floor 6-7 times over two days. I was completely humiliated and embarrased by having to drag myself in front of staff on these numerous times.

② Since my arrival at Thomson-USP the cells that I had been assigned too are to small to effectively move in a wheelchair in. The in-cell fixtures (design) such as the bed, sink, and shelf which are mounted to the wall, prevent me from turning around in the cell without injury. Due to the cramp space I am constantly, daily, smashing my hands against the bunk or sink, after using the toilet and moving about the cell. I have constantly complained to the on-duty building officers about the size of the cell and he told me that he can't change the size of the cell. I have written numerous complaints to the Wardens Office since January 2021, I have not receive not one response.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

③ Since my arrival at this institution I have been deprived of a Handicap-accessible shower. I was initially housed in C-2 for approx. 3 weeks from my initial arrival, on 1-20-2021. I was re-housed on 2-8 or 9-2021 to E-Unit Housing where I am currently. Every two weeks I and another disable inmate rotate cells from E-1 cell#1, to, E-4 cell#1. In neither E-1 or E-4 is their a wheelchair accessible shower. I have been to several (7-8) BOP Prisons and all of these Prisons are designed with a wheelchair accessible shower that have handrails afixed to the walls as well as a seat afixed to the wall. None of the showers in E-Unit or C-Unit have any handrails or shower seat. Three times a week I am let out the cell to take a shower. Once Im placed in the shower I am confronted with a hazardous situation. Inside the shower is a plastic chair that is loosely placed under the shower head. When I go from the wheelchair, in a sitting position, and pop-off the armrest to attempt to slide onto the loose plastic chair. The plastic chair always slide from under me before I can get on to it and I fall to the floor hard. Then I have to push my wheelchair against the wall,

SEE ATTACH SHT#3

5

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ATTACH SHEET 3 of 14

## IV. STATEMENT OF CLAIM

re-mount the armrest, and pull myself up onto the wheelchair. When I got to this institution I initially would try 3- to 4 times/attempts to get so onto the plastic chair but would constantly fall to the floor. I would yell for help but when the various different correctional officers would respond. They would tell me that they are not allowed to open the cell door without me being restrained (shower/cell door). So my choice was to either, nakedly, drag myself across the shower floor to the door, or, instead up into the wheelchair. I would ask CIOs if they were trained in handling disabled inmates and they would all admit that they were not.

It has been my experience that allowing people who have no training in dealing with the physical disable could potentially cause more harm than good, in attempting to assist.

Sometimes, when I cried out for help the responding staff member would be a female officer and she would be hesitant to even look in the shower, to me on the floor naked. These situations are awkward and embarassing.

So within the last week I have taken to showering, nudely, on the floor of the shower.

ATTACH SHEET # 4 of 14

## IV. STATEMENT OF CLAIMS

It must be noted that approx. 40-50 inmates shower daily and the amount of waste and bacteria that is on the shower floor is significant, exposing me too possibly contracting staph infection or other unknown skin infections.

To my knowledge I am the only person subject to these conditions in my housing unit as none of the other inmates suffer from physical disability's.

I have asked numerous C/Os including the facilty Capt. Leonowicz why there is no handrails or shower seat afixed to the shower room? I have consistently been informed that "their use to handrails in the showers but we took them out couple years ago" "We don't have wheelchairs here", when I ask why am I here if this facility is not in compliance with the Rehabilitation Act of 1973, everybody I talk to say "I don't know."

Furthermore, in E-1 range the shower that I am placed in has two (2) large drainage holes in the ground. The floor is not a flat surface. Every time the housing unit officer push me into this shower room my wheelchair tips forward and nearly throws me out the wheelchair. And since I am handcuffed, always, when I come out of the cell I have no way of controling my wheelchair

ATTACH SHEET #5 of 14

## IV. STATEMENT OF CLAIMS

before staff push me onto the shower floor. Let me better explain. When, whoever, built this shower floor they made an indention into the floor so that the water from the shower head would run down into the drain, which is good, but hazardous to a wheelchair user. Wheelchair users require a level-path of travel. Especially, like my wheelchair has small wheels in the front and large wheels in the back. Any un-level area can cause a wheelchair to tip forward and throw the occupant onto the floor. The shower in E-1 Housing has about a 3 to 4 inch (maybe more) dip into the ground, in two drainages on the floor. However, when I'm moved every two (2) weeks (due to BOP policy mandating cell rotations) to E-4 the shower in this range is leveled all around.

Lastly, this entire institution is a physical hazard to the safety of a wheelchair user, or anyone who have difficulties walking. On 1-20-2021, and again on 2-8 or 9, 2021, and again, on or around beginning of March 2021, I had the unfortunate pleasure of being pushed outside and around (within) this institution. On 1-20-2021 I was transported from Medical to R+D (Receiving and Discharge)

## ATTACH SHEET #6 of 14

### IV. STATEMENT OF CLAIMS

and then from R&O to C-Unit housing. Each time I exited and entered a Building I was subject to an un-leveled floor, best way I can explain it it's like a sharp speed bump. Where the door entrance is, the outside sidewalk is either lower or higher than inside the bldg. walkway. So for individuals like me that have a bad back, when I ride over anything thats like a bump it sends a sharp jolt of pain through my lower back

Each time (3x) I was transported via wheelchair outside of a Housing Bldg I was assigned a staff member who admited to me that they had no experience in pushing wheelchairs around. Pushing a wheelchair with a 240+ pd. person in it is easier when you just look at it but in practice it is quite dangerous if you don't know what your doing.

On 3-3-2021 I was placed in a situation with a staff member pushing my wheelchair that resorted in me being thrown out of my wheelchair face down. Staff came to my cell to escort me to the outside recreation. Once we got to the entrance of the outside yard I was met with an un-leveled floor. The staff member speed was too fast and we/I hit the un-leveled area hard it caused an adjustment of my body and legs.

ATTACH SHEET # 7 of 14

IV. STATEMENT OF CLAIMS

I was trying to deal with the sudden jolt of pain up my back when my left foot became caught in the left front wheel, of the wheelchair. The staff member continued to push forward and before I knew it I was thrown from the wheelchair face down into the ground. This happen in 2-3 seconds. I remember one of the officer present was C/O Mullins, however he was not the one pushing me. Both officers picked me up, and doing so caused alot of unintentional pain to my back, placed me in the wheelchair and continued to wheel me in the outside recreation cage.

This incident occured for (3) reasons ① The ground being un-leveled from the E-4 housing block to the outside recreation area. ② Staff Officer pushing my wheelchair to fast and not being conscious of the ground, and ③ The wheelchair not having footrests where its design to be. Causing my feet to drag onto the ground.

On 2-9-2021 I was transported from C-Unit to E-Unit. This was a long transport as C-Unit and E-Unit are not on the same yard. This appeared to be a half of a mile transport, with snow on the ground. During this transport I was constantly subject to pot holes, and un-leveled sidewalk. The ice was making the wheels

ATTACH SHEET # 8 of 14

## IV. STATEMENT OF CLAIM

on my chair difficult to spin. And it was freezing. The Staff member pushing me, plowed forward blindly throw the snow, as in certain areas he couldn't even see the ground. However, we were at the end of a long line of inmates and CIOs & walking to E-Unit.

I felt anywhere from 10 to 12 bumps along the way. This was a very painful ride.

And then again around the middle of March I was taken to the Dentist to have my upper left wisdom tooth removed. Again leaving E-Unit front entrance and coming back in, I was subject to un-leveled ground (hard bumps). Once we got to Medical same thing, going in and coming out an un-leveled bump at the entrance, shooting a jolt of pain up my lower back. And again the staff member that was assigned to push/escort me to Medical had never pushed or handle a wheelchair and admitted to me that he has never been trained in the proper handling of persons in a wheelchair. Had my tooth not been hurting so bad I would have refuse to go to the dentist, as un-trained persons, and hazardous environmental conditions is a recipe for me to be hurt.

ATTACH SHEET #9 of 14

# CONCLUSION

I have been incarcerated long enough, that the Federal Bureau OF Prisons and all of it's Prisons are subject to compliance with the Rehabilitation Act of 1973, to know that the FBOP is aware of this as well.

When I got to this facility Thomson-USP I was informed by several different Correctional Officer that this Prison was built by the State OF Illinois and not the Federal Government. It is possible that when the State Constructed this Prison they knew that wheelchair inmates or disable prisoners would not be among it's intended population.

Regardless, the Feds have been operating this institution for a few years now and they know that their facility's are required to be in compliance with the Rehabilitation Act of 1973 and the Americans w/ Disability Act of 1992 Title II. This institution is not in compliance with either Act.

Disable inmates, like myself, should be afforded the basic measure of accomadations that society would recognize I have been placed in an environment that is Cruel and Un-Usual in violation of the Eighth (8) Amend. of the U.S. Const.

1. Placed in cells to small for my wheelchair to move around without causing injury to my hands;

ATTACH SHEET #10 of 14

# Conclusion

2. Being deprived of a Handicap-accessible shower that would allow me to safely bath without falling and injuring myself;

3. Subject to un-leveled grounds that causes constant injury to my lower back;

4. Being pushed in my wheelchair by C/Os that have no proper training in the handling of wheelchair persons, subjecting me to being pushed into walls, doors, and over un-leveled grounds.

Litigating this issue is complicated. As the people I'am require to complain to are not disabled or in a wheelchair and cannot see things through the lenses of a wheelchair user. Furthermore, I am the only wheelchair user here on the Southside Yard with over a thousand inmates. Easily, my complaints are drowned out by the non-disabled inmate population. But although I'am the only wheelchair inmate, I'am not the first. I have been made aware that right before I got here there was an obese wheelchair inmate here and that he was transfered because this institution could not meet his handicap

Case 3:21-cv-50156 Document #:23 Filed: 01/15/21 Page 16 of 25 PageID #:171

ATTACH SHEET #-IF-I-try

# CONCLUSION

needs. All that I'm concern with is the predicatement I'am faced with. But it is not overlooked pursuant to the Equal Prot. of the Laws that no other inmates have problems moving about their cells, taking a shower, going to outside recreation, or being escorted by staff who bangs them into walls and doors.

I've noted that I've talked to Capt. Leonowicz to no avail. I've also talked to my Unit Manager Borden when I first got to E-Unit. I made him aware of the lack of handicap-accessible environment. MR. Borden straight told me to my face "your not getting anything in that shower" and "the cell is what you get." MR. Borden and Capt. Leonowicz are directly responsible for my safety and Housing.

Everyday, I have to make a decision (a gamble), do I want to come out the cell and be subject to the circum-stances described above or refuse. I would like to attend outside Rec like all the other inmates and shower as well. But I know it comes with the high possibility of injury and this has been causing me to refuse showers and out of cell recreation, to avoid the imminent threat of serious injury. However, just sitting in a cell I cannot safely move around in day in day out for weeks to months

ATTACH SHEET # #13 OF 14

# CONCLUSION

is not healthy mentally for me neither.

The BOP has issued Program Statements 5200.05 and PS 5200.06 to address the issue that I allege here. However this facility does not abide by such Washington D.C. Program Statements

My complaint letters to the Wardens office has never been responded too. I have sent (5) letters to the Wardens office since 2-1-2021. My Counselor Barmes refuses to provide me more than one administrative remedy "complaint" form at a time. And since I currently have a pending complaint about my legal property I can't formally file another complaint until that one is resolved. The BOP grievance system has (4) four levels, and it can take several months to resolve a complaint. In the meantime my disability/handicap issue will remain unresolved/ignored. This is unacceptable and I am of the position that the grievance system is _unavailable_ pursuant to U.S. Supreme Ct. opn. in Ross v. Blake (2016 or 17)

Not only did I know that the conditions here (At Thomson-USP) were going to be unconstitutional when the day I got here my wheelchair was taken from me the first (2) two days I was here, but

ATTACH SHEET # 13 OF 14

# CONCLUSION

When my wheelchair (a defective one) was provided to me it was accompanied by a copy of a updated "Medical Duty Status" form (ATTACHED AS AN EXHIBIT).

A "MDS" form is the form that the institutional Medical Doctor or Physical Therapist utilizes after conducting an examination of the patient, it lists the items that the M.D. or P.T. authorizes an inmate to keep in his possession to assist his or her disability or other medical conditions.

Well Health Services Administrator Kruger made a medical judgement on the (2nd) second day of my arrival - without even physically examining me - HSA Kruger ordered that my 4point cam walker would be confiscated and that I would only be allowed a wheelchair - a wheelchair with no footrest. At my last facility I was under the direct medical care of a Doctor and Physical Therapist who authorized me a walker to assist me in getting out of and into a wheelchair as I have partial paralysis on my lower left side which significantly affects my balance while standing. The previous Doctor also wanted me to exercise with the

ATTACH SHEET # 14 OF 14

# CONCLUSION

walker by taken steps upright to promote blood circulation and prevent muscle atrophy.

While the HSA kruger, has sidelined my rehabilitation efforts and for over two months I have been confined to a defective wheelchair.

Around mid-March I was medically-examined by a Medical Doctor who conducted my yearly "Chronic-Care Visit." I explained everything that I been going through to this doctor (the doctor wore a I.D. card that stated he was a contractor) everything that I stated in this complaint. The Doctor then reviewed my MOS on the computer, read what HSA kruger put on my MOS and said "I can't go against what he says, he's my boss"

I then began to talk in such a legal way, using terms as "Deliberate Indifference" and "Rehabilitation Act" "The U.S. Courthouse in Rockford". In light of this the Doctor said "I'm going to document everything you tell me and I'm going to refer you to be seen by the Physical Therapist that's all I can do." He further stated "I don't want you sueing me."

ATTACH SHEET #~~13~~ 15 of 14

# CONCLUSION

I am asking this Court to Liberally construe my complaint and at the very least appoint me an attorney who can put what I'm complaining about in legal terms.

The Prison Officials here are aware of my medical / disability situation and the lack of Handicap-accessible facilities and they are clearly indifferent to those needs.

Congress passed the Rehabilitation Act and the Americans w/ Disability Act because they knew that a law would have to be passed in order for entity's to accomadate the disable. The Bureau OF Prisons is not exempt from complying with these laws.

MAURICE HUNT #70092-097

I declare under Penalty of Perjury that the foregoing is true and accurate to the best of my knowledge.